CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 01 2012

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ABIGAIL G. SHOMO, | ) | Case No.: 7:11-cv-508 |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| v. | ) | By: James C. Turk |
| JUNIOR CORPORATION, | ) | Senior United States District Judge |
| Defendant. | ) | |

This matter is before the Court on Defendant Junior Corporation ("the Corporation")'s Motion for a Protective Order (ECF No. 25) and its Motion to Dismiss the Second Amended Complaint (ECF No. 33). Plaintiff Abigail Shomo has filed a brief in opposition to the motion to dismiss, the Court heard argument in chambers on both motions on April 26, 2012, and the matters are now ripe for disposition. For the reasons set forth below, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part, and the Motion for a Protective Order is **GRANTED**.

I.   **Factual and Procedural Background**

The facts are set forth in the light most favorable to the plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The Corporation owns and operates the "Mi Puerto" restaurants in Radford and Fairlawn, Virginia. Leopoldo Lopez Aguirre ("Aguirre") is the President of the Defendant. His son, Leopoldo Aguirre, Jr. ("Junior") was the co-owner and manager of the Mi Puerto location in Fairlawn.

Shomo commenced employment at the Mi Puerto restaurants in May 2010. Shomo began a sexual relationship with Junior in June 2010. While she initially worked at both the

1

Fairlawn and Radford locations, in or about July 2010, Shomo began to work full time at the Radford location. In July 2010, Aguirre gave instructions that Shomo be fired.[1] In September 2010, Shomo became pregnant with Junior's child. In October 2010, one of Shomo's co-workers spat in her face and told her that Aguirre hated her and would be glad to be free of her "pregnant [behind]." At some point after he learned that Shomo was pregnant, Junior told her that she should have an abortion and offered to pay for it. Junior also told her that she would be fired if she did not terminate her pregnancy. Sometime between December 2010 and January 2011, Shomo was asked to work fewer hours and directed to work in a part of the restaurant that would earn her less money.

On January 30, 2011, Aguirre and Shomo had a conversation. Aguirre told Shomo that he was satisfied with her performance, but that customers did not want to see "a belly" on their waitresses, and instead preferred to be served by a slim young waitress. Aguirre then told Shomo that she could not work in his restaurant because she was pregnant, and that she was being fired or laid off because of her pregnancy.

Shomo filed suit against the Corporation in this Court on October 27, 2011. With leave of Court, she filed an Amended Complaint on January 18, 2012 and a Second Amended Complaint ("Complaint") on March 19, 2012, alleging (1) violation of Title VII of the Civil Rights Act of 1964; (2) violation of the Fair Labor Standards Act; and (3) wrongful termination in violation of Virginia common law. The Corporation has now moved to dismiss the Complaint, arguing that none of the counts in the Complaint state claims for which relief may be

---

[1] Although the Complaint alleges that Aguirre, Defendant's President, ordered her fired in July 2010, it is silent as to why she was not actually fired at that time. It is also unclear as to whom he gave these instructions.

2

Case 7:11-cv-00508-JCT   Document 39   Filed 06/01/12   Page 2 of 15   Pageid#: 197

granted. The Corporation has also moved for a protective order limiting discovery to the issue of whether it has fewer than 15 employees.

**II.     Standard of Review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). A complaint must include a short and plain statement of the claim(s) under which the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Under the notice pleading standard employed by the federal courts, the complaint need only "give the defendant notice of what the claim is . . . and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to survive a motion to dismiss, however, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In particular, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). While the Court is obligated to accept as true all of the complaint's well-pled factual allegations and take the facts in the light most favorable to the plaintiff, Adock v. Freightliner, LLC, 550 F.3d 369, 374 (4th Cir. 2008), it will not give the same reverence to "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, 591 F.3d at 255 (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

**III.    Discussion**

    **A. Count I: Title VII**

3

The specific part of the Complaint dealing with Title VII's numerosity requirement reads as follows:

> At all times material hereto defendant is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). On information and belief, at all times material hereto defendant was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto defendant was a person engaged in an industry affecting commerce who had fifteen or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

Complaint at ¶ 5. The Corporation argues that this statement, which it deems a simple parroting of the statute, is insufficient to allege a Title VII violation under the heightened standards announced in Bell Atl. Corp.v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Specifically, the Corporation argues that Shomo has failed to allege sufficient facts to show that it met the Title VII standard of 15 or more employees. In Twombly and Iqbal, the Supreme Court adopted a stricter interpretation of the notice pleading standard that has long-governed civil actions in the federal courts. This stricter criterion is commonly termed the "plausibility standard." Under the plausibility standard, in order to survive a motion to dismiss, "the complaint must contain facts plausibly showing" that the defendants violated the law. Iqbal, 556 U.S. at 682.[2] A mere "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

---

[2] Shomo has attached an affidavit to her opposition brief, attesting that Junior employed at least 17 employees. See Ex. A to Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss, ECF No. 35. In order to properly consider this affidavit, the Court would be required to convert the motion into one for summary judgment and give the parties an adequate opportunity to adduce evidence in support or in opposition to that motion. Fed. R. Civ. P. 12(d); Cf. George v. Kay, 632 F.2d 1103, 1106 (4th Cir. 1980) ("If it is necessary for the court to look beyond the pleadings, the 12(b)(6) motion must be converted into a motion for summary judgment and all parties must be given the opportunity to present materials pertinent to such a motion."). But see New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994) (court may rely on materials outside pleadings where they are referenced in complaint). The parties have represented that no discovery has taken place in the matter and it would thus

Other courts have found that language of the type Shomo uses here is sufficient to make it past the pleading stage. In <u>Burnette v. Austin Med., Inc.</u>, No. 1:11cv52, 2011 WL 1769445 (W.D. N.C. Apr. 14, 2011), the plaintiff filed suit against her employer, alleging Title VII claims of sex discrimination and retaliation. The only allegation in the plaintiff's complaint as to the number of employees read as follows:

> Defendants were the employer of Plaintiff, as the term "employer" is defined in Section 701(b) and (h) of Title VII of the Civil Rights Act of 1964 and North Carolina Equal Employment Practices Act, as amended from time to time, and has had more than 15 employees during the time period complained of herein.

Complaint at ¶13, <u>Burnette</u>, *supra*. That allegation, unquestionably of less substance than the one before the Court, was enough to survive a motion to dismiss. <u>Burnette</u>, 2011 WL 1769445, at *3. *See also* <u>Shomo v. Mugar Enters., Inc.</u>, Civ. No. 2007-154, 2009 WL 3181936, at *5 (D.V.I. Sept. 28, 2009) (post-<u>Twombly</u> but pre-<u>Iqbal</u> case concluding that allegation that defendant "is a Title VII employer with at least fifteen (15) employees" was enough to survive motion to dismiss).

The Court finds that Shomo has stated a claim for relief under Title VII. Paragraph Five cannot be read in isolation; rather, when considering a motion to dismiss, the relevant inquiry is whether, looking at the four corners of the complaint, the plaintiff has stated a claim upon which relief may be granted. *See* <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). It is true that Paragraph Five may be read as a mere "parroting" of 42 U.S.C. § 2000e(b). If this were the *only* allegation in Shomo's Complaint, the Complaint would have to be dismissed. But it is not. Among other things, Shomo also alleges that she worked in a restaurant with two locations, and that she was eventually fired on account of her pregnancy and her sex. With the benefit of its

---

be premature to consider a motion for summary judgment. Accordingly, the Shomo Affidavit is excluded from consideration.

5

"judicial experience and common sense," Iqbal, 556 U.S.at 679, and taking the Complaint as a whole, the Court finds that Shomo has plausibly stated a claim for relief under Title VII.

### B. Count II: Fair Labor Standards Act

Next, the Corporation claims that Shomo has failed to state a claim under the Fair Labor Standards Act ("FLSA") because she has failed to adequately allege that either she or the Corporation were involved in interstate commerce. The FLSA requires employers to pay their employees a minimum wage of at least $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). However, "tipped employees," such as waiters and waitresses, who customarily receive more than $30 per month in tips, may be paid as little as $2.13 per hour, as long as the tips the employee receives are sufficient to give that employee an effective minimum wage of at least $7.25 an hour. *See* 29 U.S.C. §§203(m); 203(t).

But the FLSA only governs where an employee is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," *id.* § 207(a). An "enterprise engaged in commerce or in the production of commerce" is one that has two or more employees, is engaged in commerce or the production of goods for commerce, and has annual gross sales of $500,000 or more. *Id.* §203(s). Finally, "commerce" is defined as "trade, commerce, transportation, transmission, of communication among the several States or between any State and any place outside thereof." *Id.* § 203(b). Where a covered employer fails to pay a covered employee the minimum wage, the employee may bring a civil action for damages. *Id.* § 216(b). Defendant argues that Shomo's FLSA claim must be dismissed because she has failed to allege that she is a covered employee,

*i.e.* that she engaged in interstate commerce in the course of her duties, or that the Corporation was a covered enterprise within the meaning of the FLSA.

Shomo responds by directing the Court to Paragraph Five of the Complaint, in which she alleges that the Corporation was a person "engaged in an industry affecting commerce," within the meaning of 42 U.S.C. § 2000e(b). But this is not enough. The definition of "commerce" under Title VII is similar, but not identical, to its meaning in the FLSA. *Compare* 42 U.S.C. §2000e(g) *with* 29 U.S.C. § 203(b). Shomo's Complaint fails to allege any facts giving rise to the inference that she engaged in interstate commerce within the course of her duties; indeed, as a waitress, this would be difficult to show. Moreover, she has failed to state a claim under the FLSA's "enterprise coverage" provisions because she has failed to state facts that give rise to the reasonable inference that the Corporation was a covered enterprise under the FLSA. It is certainly *possible* that Mi Puerto generated $500,000 or more in gross annual sales, and it is also possible that it does not. But a possibility is insufficient—to survive a motion to dismiss, Shomo must cross the hurdle of *plausibility*. She has not done so here. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotations omitted). Accordingly, Count II must be dismissed.

### C. Count III: Bowman Claim Under Virginia Law

In Count Three, Shomo claims that she was wrongfully terminated because she refused to have an abortion. Since this claim is based on Virginia common law, it is governed by the substantive law of Virginia. *See generally* Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Virginia Supreme Court has never recognized a wrongful termination claim of this type, but

it has not rejected such a claim either. In the absence of controlling precedent from Virginia's highest court, it is this Court's role to predict how the Supreme Court of Virginia would rule on the matter, and issue its decision in accordance with that prediction. *See* Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008). *See also* Wells v. Liddy, 186 F.3d 505, 528 (4th Cir. 1999) (listing various sources which may aid a federal court in predicting how a state supreme court would decide a particular issue).

Not only is Virginia an at-will employment state, s*ee* Conrad v. Ellison-Harvey Co., 91 S.E. 763, 766 (Va. 1917); Stonega Coal & Coke Co. v. Louisville & Nashville R. Co., 55 S.E. 551, 552 (Va. 1906), but it "strongly adheres to the employment-at-will doctrine." Lockhart v. Commonwealth Educ. Sys. Corp., 439 S.E.2d 328, 330 (Va. 1994). Under the employment-at-will doctrine, "when the intended duration of a contract for the rendition of services cannot be inferred by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice." *Id.* In other words, in most instances, a Virginia employer may fire an employee for any reason or for no reason at all. However, beginning in 1985, the Supreme Court of Virginia began to recognize a narrow exception to this general rule, termed the "public policy exception."

The Supreme Court of Virginia first recognized the public policy exception in Bowman v. State Bank of Keysville, 331 S.E.2d 797 (Va. 1985). In Bowman, the plaintiffs were employed at the State Bank of Keysville, and also owned a small number of shares in the company. The Bank's management had negotiated a merger with another company, and a shareholder meeting was convened to vote on the merger. The Bank's President told the plaintiffs that they would be fired if they failed to vote in favor of the merger. The plaintiffs, fearful of losing their jobs, voted in the affirmative, but later sent the president a letter claiming

8

that their proxies were "null and void" because they had been obtained illegally. The Bank's Board subsequently voted to abandon the merger. Shortly thereafter, the plaintiffs were fired and brought actions for wrongful termination. The bank argued that since the plaintiffs were at-will employees, they were out of luck. The court felt differently. Reasoning that the plaintiffs had a statutory right to vote on corporate matters, and that right was in furtherance of established public policy, the court held that an "employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation." Bowman, 331 S.E.2d at 801. In so doing, the court emphasized that it was only creating a "narrow" exception to the employment-at-will rule. *Id.*

Since Bowman, the Virginia Supreme Court has recognized an exception to the at-will doctrine in only three instances: (1) where an employer violates a policy enabling the exercise of an employee's statutorily created right; (2) where the employer violates a public policy that is explicitly expressed in a statute and the employee was "clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and (3) where an employee is fired because of his or her refusal to engage in a criminal act. Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2002). Here, Shomo claims she was fired because she refused to abort her unborn child. She argues that this firing was contrary to the public policy of Virginia, and thereby unlawful despite the general rule.

The Virginia Supreme Court has established that a plaintiff seeking to bring a Bowman claim must identify with specificity the sources of the public policies allegedly violated. Lawrence Chrysler, 465 S.E.2d at 809. Shomo has identified three specific sources of public policy that were violated by her termination: (1) Va. Code § 18.2-57; (2) Va. Code §§ 18.2-71–

9

76.1; (3) the Virginia and United States Constitutions. The Court will address each of these in turn.

### a. Prohibitions on Assault and Battery

Shomo first argues that she should be able to bring a wrongful discharge claim because "to the extent [she] did not wish to have an abortion, she would have to consent to the commission of an assault and battery against her her [sic] person to keep her job." Pl.'s Mem. in Opp. to Mot. to Dismiss Sec. Am. Compl. at 8, Apr. 24, 2012, ECF No. 35. In Mitchem v. Counts, 523 S.E.2d 246 (Va. 2000), the plaintiff alleged that her employer "massaged her shoulders, patted her buttocks, touched her leg, rubbed her knee and hugged her against her will." *Id.* at 248. She also alleged that on one occasion, the employer "pulled her onto his lap, wrapped both arms around her, and tried to kiss her on the lips." *Id.* Finally, she alleged that she consistently refused to enter into a sexual relationship with her employer. The plaintiff brought a Bowman claim, arguing, *inter alia*, that she was fired for refusing to consent to a battery upon her person, which battery would be in violation of Va. Code § 18.2-57. The court rejected this claim, because the public policy reflected in the assault and battery statute did not reflect a wrongful termination under the circumstances. The court reasoned that because the plaintiff's employer did not require her to *commit* battery as a continued condition of employment, and because if the plaintiff had consented to the commission of the battery, no battery would have occurred at all, the fact that she would be required to consent to a battery was not enough to bring her within the ambit of the public policy underlying Section 18.2-57.

Here, Shomo alleges that her termination was violative of Virginia public policy because requiring her to have an abortion would have the effect of requiring her to consent to battery.

10

But this reasoning was explicitly rejected in Mitchem. It is clear that the Virginia Supreme Court would not recognize a Bowman claim on the basis of the criminal assault and battery statute, and Count III cannot survive on this basis.

### b. Laws Regulating Abortion

Shomo next looks for support in Sections 18.2-71 through 18.2-76.1 of the Code of Virginia, which comprise various restrictions on abortion. An individual may not bring a Bowman claim based on the public policy inferred from a statute unless he or she falls within the class of persons that the specific public policy is intended to benefit. Dray v. New Mkt. Poultry Prods., Inc., 518 S.E.2d 312, 314 (Va. 1999). Shomo argues that the abortion statute was meant to protect pregnant mothers from the specter of others doing harm to their unborn children. But the Virginia Supreme Court has squarely rejected this reasoning: "The Virginia anti-abortion statute . . . . was passed not for the protection of the woman, but for the protection of the unborn child and through it society." Miller v. Bennett, 56 S.E.2d 217, 221 (Va. 1949).

Shomo seeks refuge in Virginia's conscience clause, Va. Code § 18.2-75, arguing that it prohibits denial of employment to any person who refuses to participate in an abortion. First, the conscience clause is clearly aimed at protecting medical personnel who do not wish to participate in an abortion. But more importantly, Shomo fails to read the rest of the statute. The conscience clause only prohibits the firing of those individuals who refuse to participate in an abortion after they have "state[d] in writing an objection to any abortion or all abortions on personal, ethical, moral or religious grounds." Va. Code § 18.2-75. Nowhere does Shomo allege that she stated such an objection. Moreover, Shomo's reliance on Code § 18.2-76.1, which prohibits encouragement or promotion of abortion, is also misplaced because that section applies only to

those abortions that are otherwise prohibited under the chapter, *i.e.* illegal abortions. Again, there is nothing in the Complaint that indicates Junior or the Corporation forced Shomo to have an illegal abortion. Because the statutes restricting abortion were not meant to protect someone in Shomo's position, she cannot bring a Bowman claim on this basis.

### c. Virginia and United States Constitutions

Shomo also argues that she can bring a Bowman claim on the basis of the Virginia and United States Constitutions. The Virginia courts have never recognized a Bowman claim on the basis of public policy embedded in the federal Constitution. Rather, Bowman recognized an exception to the employment at will doctrine where an employee was terminated in violation of *Virginia* public policy. The Court finds it unlikely that the Virginia Supreme Court would recognize a claim on the basis of the federal Constitution.

The Virginia constitutional claim is more complicated. The Supreme Court of Virginia has never recognized a Bowman claim on the basis of the state constitution. In Mitchem, the trial court held that the plaintiff could not base a wrongful discharge claim on the United States Constitution, the Virginia Constitution, or the Declaration of Independence, but because the plaintiff did not contest those decisions on appeal the Virginia Supreme Court declined to reach the question. Mitchem, 523 S.E.2d at 248 n.3. Shomo argues that because the Bowman court looked to laws of other states to inform its analysis, and since some of those other states allow for a wrongful termination action based on their state constitutions, Virginia must as well. The Court need not resolve that issue here.

Even assuming that a plaintiff may bring a Bowman claim on the basis of the Constitution of the Commonwealth, Shomo's claim must fail. Shomo now claims that one of the

reasons she refused to have an abortion was due to her religious beliefs, and she points to various sections of the Constitution of Virginia that touch on religion. *See, e.g.,* Va. Const. Art. I, § 16. These constitutional provisions, she argues, represent Virginia's public policy of religious liberty. But nowhere in the Complaint does Shomo allege that she was fired on the basis of her religious convictions or that her refusal to have an abortion stemmed from those religious convictions. Indeed, the Complaint does not mention religion at all. Again, this matter is before the Court on a motion to dismiss the *complaint*, and late-founded allegations of religiousity notwithstanding, Pl.'s Mem. in Opp. to Mot. to Dismiss at 12, the Court cannot look outside the Complaint. But even if Shomo had properly alleged that she refused to get an abortion on religious grounds, discrimination on the basis of religion is one of the protections specifically outlined in the Virginia Human Rights Act. Va. Code § 2-3900. An individual cannot bring a Bowman claim based upon a public policy that is reflected in the Virginia Human Rights Act. Doss v. Jamco, Inc., 492 S.E.2d 441, 447 (Va. 1997). Accordingly, any Bowman claim on this basis must also fail.

Terminating an employee simply because she refuses to have an abortion offends the conscience of the Court. Moreover, there is substantial evidence that the public policy of the Commonwealth seeks to limit abortion. But the question here is whether that is enough to allow Shomo to sustain her state law claim under Bowman and its progeny. The Court reluctantly concludes that it is not. Bowman does open the door to a claim for wrongful termination in contravention of Virginia public policy. But as the Supreme Court of Virginia has stated again and again, Bowman is a *narrow* exception to the employment at will doctrine, and "[w]hile all statutes of the Commonwealth reflect public policy to some extent, since otherwise they presumably would not have been enacted by [the] General Assembly, termination of an
13

employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge." City of Virginia Beach v. Harris, 523 S.E.2d 239, 245 (Va. 2000). For these reasons, Count III must be dismissed.

### D. Motion for a Protective Order

The Corporation has also moved for a protective order limiting discovery to the issue of whether it employs less than fifteen persons within the meaning of Title VII of the Civil Rights Act. As noted above, the Corporation only incurs liability under Title VII if it meets this threshold of numerosity. Defendant further requests that any such protective order remain in effect until after the dispositive motion stage. The Court may limit discovery to protect a person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Although Shomo has not filed a written response to this motion, she claimed at oral argument that entry of such an order would "double the cost of discovery" and be overly burdensome. Having considered the parties' legitimate concerns, as well as judicial economy and the interests of justice, the Court has determined that bifurcated discovery is appropriate in this case and will grant the Motion for a Protective Order.

The parties will have 90 days of discovery which will be limited to the issue of whether Junior Corporation employed 15 or more persons within the meaning of Title VII during the relevant time period. Thereafter, any party who wishes to file a dispositive motion as to the numerosity issue must do so within 14 days of the end of discovery. If Shomo's claim survives, then further discovery will be granted with regard to the remaining issues in the case, and the parties will again be afforded the opportunity to file dispositive motions at the end of this second stage of discovery.

## IV. Conclusion

For the foregoing reasons, Defendant Junior Corporation's Motion for a Protective Order is **GRANTED** in part **and DENIED** in part and its Motion to Dismiss the Second Amended Complaint is **GRANTED**. An appropriate Order shall issue this day.

**ENTER**: This ___ day of June, 2012.

*/s/ James C. Turk*
Senior United States District Judge